1  BENJAMIN B. WAGNER
   United States Attorney
2  PHILIP A. FERRARI
   Assistant United States Attorney
3  MAGGY KRELL
   Special Assistant United States Attorney
4  501 I Street, Suite 10-100
   Sacramento, CA  95814
5  Telephone:  (916) 554-2700
   Facsimile:  (916) 554-2900
6
   Attorneys for Plaintiff
7  United States of America

**FILED**

SEP 1 1 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

8

9

10              IN THE UNITED STATES DISTRICT COURT

11                 EASTERN DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,           CASE NO.  CR S 12-0362 TLN

13                      Plaintiff,      VIOLATIONS: 18 U.S.C. § 371 – Conspiracy;
                                        18 U.S.C. § 1341 - Mail Fraud Affecting A Financial
14            v.                        Institution (11 Counts); 18 U.S.C. § 1957 - Monetary
                                        Transactions In Criminally Derived Property
15  ALAN DAVID TIKAL,                   (2 Counts); and 18 U.S.C. § 981(a)(1)(C),
    TAMARA TERESA TIKAL,                28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1), and
16    aka Tamara Teresa Silva, and      18 U.S.C.  § 982(a)(2)(A) – Criminal Forfeiture
    RAY JAN KORNFELD,
17
                        Defendants.
18

19

20              S U P E R S E D I N G  I N D I C T M E N T

21  COUNT ONE: [18 U.S.C. § 371 - Conspiracy]

22       The Grand Jury charges:  T H A T
                        ALAN DAVID TIKAL,
23                    TAMARA TERESA TIKAL,
                     aka Tamara Teresa Silva, and
24                      RAY JAN KORNFELD,

25  Defendants herein, as follows:
        A.    **Parties, Relevant Persons, and Entities**
26

27       At times material to this superseding indictment:

28       1.    Defendant ALAN DAVID TIKAL was an individual residing in the District of

                                        1

Superseding Indictment

1  Minnesota, the District of Nevada, the Northern District of California, and the Eastern District of

2  California.

3         2.      Defendant ALAN DAVID TIKAL was a principal of the KATN Trust, a purported

4  revocable living trust, through which he operated his business, which was variously called a Banker

5  Acceptance Program, Mortgage Debt Relief Program, and Homeowner Rehabilitation Program

6  (hereinafter referred to as "mortgage relief program").  KATN is an acronym for "Kicking Ass, Taking

7  Names."

8         3.      Defendant TAMARA TERESA TIKAL, previously known as Tamara Teresa Silva, was

9  an individual residing in the District of Minnesota, the District of Nevada, and the Northern District of

10  California.  On or about November 26, 2011, defendant TAMARA TERESA TIKAL married defendant

11  ALAN DAVID TIKAL.

12         4.      Defendant TAMARA TERESA TIKAL filled a variety of roles in the management,

13  administration and operation of the mortgage relief program, including: supervising other mortgage

14  relief program employees; preparing and notarizing various documents; mailing documents to financial

15  institutions; receiving, filing and maintaining documents received from participants; receiving,

16  depositing and transferring participant payments; and paying various expenses including mortgage relief

17  program employee salaries and commissions.

18         5.      Defendant RAY JAN KORNFELD was an individual residing in the District of Nevada,

19  and was employed by the mortgage relief program.  His duties included responding to client inquiries

20  over the phone or by electronic mail, providing program status updates to clients, and collecting client

21  payments. Defendant RAY JAN KORNFELD also provided notary services and was responsible for

22  filing various documents with the United States Bankruptcy Court in the District of Nevada.

23         6.      Various entities were financial institutions engaged in the business of residential

24  mortgage lending, and provided such services to mortgage relief program participants, including but not

25  limited to:  Wells Fargo Bank NA; Bank of America NA; One West Bank FSB; and JP Morgan Chase

26  Bank NA (collectively, "financial institutions").

27  ///

28  ///

Superseding Indictment

1

### B.    The Object of the Conspiracy

2    7.    Beginning no later than on or about January 7, 2010, and continuing up to at least August

3    20, 2013, in the State and Eastern District of California and elsewhere, the defendants did knowingly

4    combine, conspire and agree with each other, and with others known and unknown to the Grand Jury, to

5    knowingly execute through the use of the mails and by use of private and commercial interstate carriers

6    a scheme and artifice to defraud and for obtaining money or property by means of materially false and

7    fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section

8    1341.

9    ### C.    The Manner and Means of the Conspiracy

10    The manner and means of the conspiracy were, in substance, as follows:

11    8.    It was part of the conspiracy that the defendants and their associates utilized recruiters,

12    sometimes referred to as "personal consultants," to solicit and interact with distressed homeowners in

13    the Eastern District of California and elsewhere.  The distressed homeowners were typically

14    experiencing difficulties making their existing monthly mortgage payments.  Many had fallen behind on

15    their mortgage payment obligations and were either on the verge of or already going through foreclosure

16    proceedings.  In addition, many of the distressed homeowners did not speak English as their first

17    language.

18    9.    It was further part of the conspiracy that the defendants and their associates promised

19    distressed homeowners that their outstanding mortgage debt would be reduced by 75%.  More

20    specifically, homeowners were promised that as a result of their participation in the mortgage relief

21    program, their existing debt would be replaced with a new "loan," in an amount equaling 25% of the

22    homeowner's original obligation.  These new "loans" would be owed to KATN and defendant ALAN

23    DAVID TIKAL.

24    10.    It was further part of the conspiracy that the defendants and their associates took various

25    illegitimate steps, described elsewhere in this Superseding Indictment, to prevent the financial

26    institutions from exercising their rights to foreclose upon properties that secured defaulted mortgage

27    loans.

28    11.    It was further part of the conspiracy that the defendants and their associates falsely and

3

Superseding Indictment

1   fraudulently assured distressed homeowners that if they participated in the mortgage relief program, the

2   original lenders would have no way to foreclose on their properties.  Distressed homeowners were

3   further advised to disregard notices sent to them by the financial institutions that were owed payments

4   on their existing mortgage loans.  Many of the homeowners, in reliance upon representations made by

5   defendants ALAN DAVID TIKAL, RAY JAN KORNFELD, and others, stopped making payments on

6   their existing mortgage loans.  As a result of these withheld payments, the financial institutions suffered

7   losses, the distressed homeowners fell further behind on their loan re-payment obligations, and many

8   lost their homes to foreclosure.

9        12.     It was further part of the conspiracy that the mortgage relief program was promoted to

10  recruiters and homeowners through a variety of mass communication means, including conference calls,

11  webinars, and in-person conferences.  In the course of promoting the mortgage relief program, the

12  defendants and their associates made false representations concerning defendant ALAN DAVID

13  TIKAL, the operation of the mortgage relief program, and the past and current success rate of the

14  mortgage relief program.

15       13.     It was further part of the conspiracy that in promoting the mortgage relief program, the

16  defendants and their associates made various false and fraudulent representations, including:  (a) that

17  defendant ALAN DAVID TIKAL had access to an enormous line of credit and the ability to pay off

18  distressed homeowners' mortgage debts in full; (b) that as a result of participation in the mortgage relief

19  program, a homeowner's original debt obligations would be replaced with a new "loan," in an amount

20  equaling 25% of the homeowner's original debt; and (c) that the mortgage relief program had a

21  tremendous record of past success in saving homeowners from foreclosure.  In truth and in fact, as the

22  defendants well knew, the mortgage relief program never made any payments to financial institutions on

23  behalf of homeowners in satisfaction of their pre-existing mortgage debt obligations; new "loans" were

24  never extended to any of homeowners, and the purported "loan" payments received from homeowners

25  were simply divided amongst defendants ALAN DAVID TIKAL, TAMARA TERESA TIKAL, JAN

26  RAY KORNFELD, and their associates for their personal use; there was not a single instance in which a

27  homeowner's debt was paid, forgiven or otherwise extinguished as a result of the mortgage relief

28  program; and many of the homeowners' properties were foreclosed upon by the original lenders.

4

14.     It was further part of the conspiracy that as a condition of participating in the mortgage relief program, the recruiters would receive fees from the distressed homeowners, which would be deposited into accounts maintained by certain principal recruiters.  Upon first entering the mortgage relief program, homeowners were required to provide an initial fee of approximately $1,000, and information concerning their existing home loan, including the property address, the name and address of the financial institution owning the loan, and the loan number.  Portions of these funds would then be transferred to accounts controlled and accessed by defendants ALAN DAVID TIKAL and TAMARA TERESA TIKAL.

15.     It was further part of the conspiracy that false and fraudulent documents were executed and recorded in local County Recorder's offices with respect to distressed homeowners' properties and mortgage loans, including a "Substitution of Trustee and Full Reconveyance" which purported to substitute defendant ALAN DAVID TIKAL as the "beneficiary / new trustee" for the legitimate mortgage holding financial institution, and "Deeds of Trust" that purportedly secured the distressed homeowners' new "loans" from defendant ALAN DAVID TIKAL and the KATN Trust with the homeowners' properties.  Among other things, these recordings served to make it difficult for financial institutions to foreclose on properties securing defaulted mortgage loans.  When the documents were recorded, the defendants collected additional fees of approximately $1,000 or more, referred to as "closing costs," from distressed homeowners.

16.     It was further part of the conspiracy that beginning in approximately November 2010, and continuing through at least August 20, 2013, the mortgage relief program collected "loan" payments from homeowners.  From approximately November of 2010, through January of 2011, these payments were received and deposited by an entity called CAA, Inc., or Caring About America, Incorporated. Regardless of where the "loan" payments were originally directed, a percentage of these deposits were continually transferred to accounts controlled and accessed by defendants ALAN DAVID TIKAL and TAMARA TERESA TIKAL.

17.     It was further part of the conspiracy that the defendants and their associates encouraged homeowners to file "quiet title" actions, which are civil law suits filed to prove that the homeowner's original debt had been extinguished.  In truth and in fact, these lawsuits were ineffectual and served

5

1  mainly as another means for the defendants and their associates to request and receive additional fees

2  and payments from homeowners.

3        18.    It was further part of the conspiracy that distressed homeowners would receive periodic

4  correspondence from defendant ALAN DAVID TIKAL and his associates, updating them on the

5  progress of the program, and encouraging them to continue making their monthly "loan" payments.

6        19.    It was further part of the conspiracy that in the Summer of 2011, defendant ALAN

7  DAVID TIKAL signed and caused to be filed bankruptcy petitions in the United States Bankruptcy

8  Court for the District of Nevada.  One consequence of filing a bankruptcy petition is that creditors are

9  temporarily prohibited from taking steps to recover debts from debtors.  This prohibition, known as the

10 "automatic stay," applies to actions such as property foreclosures.  In the petitions signed by defendant

11 ALAN DAVID TIKAL, he falsely and fraudulently claimed the original, legitimate home mortgage

12 loans owed by each of the distressed homeowners participating in the mortgage relief program as his

13 liabilities, and the financial institutions that extended those mortgage loans as his creditors.  Defendant

14 ALAN DAVID TIKAL utilized these bankruptcy filings to take advantage of the automatic stay and

15 thereby postpone foreclosure actions by financial institutions on homeowner properties.  Postponing the

16 foreclosure actions allowed the defendants and their associates to claim that the mortgage relief program

17 was working, to attract new distressed homeowners to participate in the mortgage relief program, and to

18 encourage the distressed homeowners to continue making payments to KATN.

19       20.    It was further part of the conspiracy that from August 25, 2011, through at least August

20 13, 2013, the defendants maintained an active bankruptcy petition filed in the name of defendant ALAN

21 DAVID TIKAL.  With respect to this petition in particular, the defendants:  a) periodically filed

22 amended schedules in the pending bankruptcy petition, adding the properties and loan obligations of

23 new mortgage relief program participants; b) filed oppositions to motions by the financial institutions for

24 relief from the automatic stay; and c) provided distressed homeowners participating in the mortgage

25 relief program with updates on the progress of the bankruptcy proceeding.

26       21.    From January 7, 2010, through at least August 20, 2013, the defendants and their

27 associates convinced more than 1,000 homeowners, residing in the Eastern District of California and

28 elsewhere, to participate in the mortgage relief program and to pay more than $3,400,000.00 in initial

6

Superseding Indictment

1  fees and "loan" payments.

2  **D.   Overt Acts in Furtherance of the Conspiracy**

3         In furtherance of the conspiracy and to accomplish its objects, the defendants, and others known

4  and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among

5  others, within the Eastern District of California, and elsewhere:

6         22.    On or about February 12, 2010, defendant ALAN DAVID TIKAL participated in a

7  conference call with potential recruiters and homeowner participants in which he claimed, among other

8  things, that he was a "registered private banker" with the ability to pay off residential mortgage loans in

9  full and replace them with new loans costing 75% less.

10        23.    On or about July 25, 2010, defendant TAMARA TERESA TIKAL notarized various

11 documents relating to homeowners L.R. and H.R. and their participation in the mortgage relief program.

12 L.R. and H.R.'s residence was located within the Eastern District of California.

13        24.    On or about September 7, 2010, defendant TAMARA TERESA TIKAL wired $8,725

14 into the account Walgreen Partners, LLC, an account maintained by J.C., one of the mortgage relief

15 program's primary recruiters.

16        25.    On or about October 2, 2010, defendant ALAN DAVID TIKAL participated in a webinar

17 conference with recruiters and potential mortgage relief program participants. During the course of the

18 webinar, defendant ALAN DAVID TIKAL claimed, among other things, that if the process was started

19 in a timely manner, he had a 100% success rate and that he had previously saved approximately 1,000

20 homes through the mortgage relief program. Mortgage relief program participant C.T. participated in

21 the webinar from her residence in the Eastern District of California.

22        26.    On or about October 4, 2010, defendant ALAN DAVID TIKAL entered into a lease

23 agreement with Tropicana Trail Limited Partnership for the purpose of securing office space for the

24 mortgage relief program.

25        27.    On or about November 22, 2010, defendant TAMARA TERESA TIKAL sent an

26 electronic mail message to participant J.N. informing him, among other things, that he could not confirm

27 the legitimacy of the mortgage relief program by contacting his financial institution because the

28 financial institution would not respond honestly, and that when the mortgage relief program process was

7

1  complete, the bank would have no legal basis to collect money from him.

2      28.     On or about January 14, 2011, defendant RAY JAN KORNFELD filed a Change of

3  Address form with the United States Post Office in Henderson, Nevada, relating to Post Office box

4  778295, which was utilized to receive payments from mortgage relief program participants.

5      29.     On or about February 11, 2011, defendant TAMARA TERESA TIKAL wrote check

6  number 5029 from her US Bank account no. xxxxx-413 in the amount of $1,000 to defendant RAY JAN

7  KORNFELD.  From the same account, defendant TAMARA TERESA TIKAL also wrote check

8  numbers 5025 in the amount of $1,000, and 5026 in the amount of $600, to S.F. and E.C., respectively.

9  These checks were payments for work done on behalf of KATN by S.F., E.C., and defendant RAY JAN

10  KORNFELD.

11      30.     On or about February 15, 2011, defendant RAY JAN KORNFELD sent an electronic

12  mail message to participant P.M. assuring her that it was extremely hard for the financial institutions to

13  overcome the effects of the mortgage relief program, and that he was unaware of a situation in which

14  they had done so.

15      31.     On or about March 15, 2011, defendant TAMARA TERESA TIKAL signed a Business

16  Account Add Signers Form giving herself signing authority over Chase Business Select Checking

17  Account xxxxx-x598 held in the name of "Learn 2 Break Free, dba KATN."  From March through

18  August of 2011, mortgage relief program participant "loan" payments were deposited into this account.

19      32.     On or about April 4, 2011, defendant RAY JAN KORNFELD sent an electronic mail

20  message to participant P.M. advising her not to respond to a letter from her financial institution relating

21  to the Home Affordable Foreclosure Alternative Program.

22      33.     On or about June 20, 2011, a bankruptcy petition seeking relief on behalf of the KATN

23  Trust was filed in the United States Bankruptcy Court for the District of Nevada.  The petition was

24  signed by defendant ALAN DAVID TIKAL, and it falsely claimed that the financial institutions holding

25  the legitimate notes on properties owned by distressed homeowners participating in the mortgage relief

26  program were KATN's creditors.  On or about August 30, 2011, the Bankruptcy Court granted a motion

27  to dismiss the petition filed by the Acting United States Trustee.

28      34.     On or about June 20, 2011, defendant RAY JAN KORNFELD sent an electronic mail

8

1  message to the mortgage relief program's participants advising them that KATN's Chapter 11

2  bankruptcy petition had been filed, and urging them to submit their monthly payments immediately.

3      35.    On or about July 18, 2011, defendant TAMARA TERESA TIKAL attended an initial

4  debtor's interview on behalf of defendant ALAN DAVID TIKAL in relation to the KATN Living Trust

5  bankruptcy petition she previously filed on his behalf.

6      36.    On or about August 5, 2011, defendant ALAN DAVID TIKAL signed an opposition to a

7  motion filed by financial institution Wells Fargo Bank NA seeking relief from the automatic stay

8  imposed as a result of the KATN Living Trust bankruptcy proceeding.

9      37.    On or about August 25, 2011, a personal bankruptcy petition seeking relief on behalf of

10  defendant ALAN DAVID TIKAL was filed in the United States Bankruptcy Court for the District of

11  Nevada.  The petition was signed by defendant ALAN DAVID TIKAL, and it falsely claimed that the

12  financial institutions holding the legitimate notes on properties owned by distressed homeowners

13  participating in the mortgage relief program were defendant ALAN DAVID TIKAL's creditors.

14      38.    On or about September 27, 2011, defendant TAMARA TERESA TIKAL signed

15  amendments to defendant ALAN DAVID TIKAL's pending bankruptcy petition which were filed with

16  the United States Bankruptcy Court for the District of Nevada.  These amendments added additional

17  mortgage relief program promissory notes as accounts receivable, and identified additional financial

18  institutions as creditors.

19      39.    On or about October 4, 2011, defendant TAMARA TERESA TIKAL signed an account

20  authorization form giving her access to a Bank of Nevada bank account no.xxxxxx-0458 opened by her

21  mother, S.E., in the name of Learn 2 Break Free.  From October through December of 2011, participant

22  "loan" payments were deposited directly into this account.

23      40.    On or about October 18, 2011, defendant ALAN DAVID TIKAL appeared telephonically

24  and testified under oath at a creditor's hearing conducted by the office of the United States Trustee in his

25  personal bankruptcy case.

26      41.    On or about December 1, 2011, defendant TAMARA TERESA TIKAL, acting on behalf

27  of KATN, entered into a "processing servicing agreement" with a company called Indcap, pursuant to

28  which, among other things, Indcap agreed to process payments submitted by mortgage relief program

9

1  victims.

2      42.    On or about February 22, 2012, defendant RAY JAN KORNFELD sent an electronic
3  mail message to participant C.T., assuring her that her property was protected by the bankruptcy and
4  describing defendant ALAN DAVID TIKAL's efforts to finish the process and resolve everything with
5  her financial institution.  C.T. received this communication at her residence located in the Eastern
6  District of California.

7      43.    On or about June 14, 2012, defendant ALAN DAVID TIKAL signed a letter sent to
8  mortgage relief program participants falsely assuring them that the mortgage relief program had
9  received a legal ruling establishing "that everything KATN has done is in fact COMPLETELY LEGAL
10  and legitimate."  The letter also encouraged participants to continue making payments or risk losing
11  their homes.  This letter was received by mortgage relief program participants residing in the Eastern
12  District of California, and elsewhere.

13      44.    On or about September 6, 2012, defendant ALAN DAVID TIKAL signed a letter sent to
14  victims purporting to provide an update on bankruptcy proceedings and falsely announcing the mortgage
15  relief program participants' disputes with the financial institutions holding their mortgage loans would
16  soon be over.  This letter was received by mortgage relief program participants residing in the Eastern
17  District of California, and elsewhere.

18      45.    On or about January 4, 2013, defendant TAMARA TERESA TIKAL opened United
19  Parcel Service box number 103-320, at 2120 Railroad Avenue, Pittsburg, California.  Mortgage relief
20  program participants were subsequently advised to send their monthly "loan" payments to this address.

21      46.    On or about March 19, 2013, defendant RAY JAN KORNFELD appeared at the Clerk's
22  Office for the United States Bankruptcy Court for the District of Nevada and attempted to present a
23  fraudulent cashier's check in the amount of $271 million.  Defendant RAY JAN KORNFELD informed
24  court personnel that he was presenting the check to pay off defendant ALAN DAVID TIKAL's
25  bankruptcy case.

26      47.    On or about August 13, 2013, an unknown person appeared at the Clerk's Office for the
27  United States Bankruptcy Court for the District of Nevada and presented for filing amendments to the
28  schedules relating to defendant ALAN DAVID TIKAL's bankruptcy petition.  Included in the amended

10

Superseding Indictment

schedules was information concerning the residence and mortgage loan pertaining to participant J.T.

All in violation of Title 18, United States Code, Sections 371 and 1341.

COUNTS TWO THROUGH TWELVE: [18 U.S.C. § 1341 - Mail Fraud Affecting A Financial Institution]

The Grand Jury further charges: T H A T
ALAN DAVID TIKAL,
TAMARA TERESA TIKAL,
aka Tamara Teresa Silva, and
RAY JAN KORNFELD,

defendants herein, as follows:

1.     The Grand Jury realleges and incorporates by reference the allegations set forth in paragraphs 1 through 6 and 8 through 47 of Count One of this Superseding Indictment.

**A.     Scheme to Defraud**

2.     Beginning on a date unknown to the Grand Jury, but not later than approximately January 7, 2010, and continuing up to at least August 13, 2013, in the State and Eastern District of California and elsewhere, defendants ALAN DAVID TIKAL, TAMARA TERESA TIKAL, and RAY JAN KORNFELD, and others known and unknown to the Grand Jury, did devise, intend to devise, and participate in a material scheme and artifice to defraud homeowners, and to obtain money from them by means of materially false and fraudulent pretenses, representations and promises and omission of material facts.

**B.     Mailings in Furtherance of the Scheme**

3.     On or about the dates listed below, in the State and Eastern District of California, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, the defendants did knowingly cause to be delivered by the mail or by private or commercial interstate carrier according to the direction thereon the following matter:

| COUNT | DATE OF MAILING | DESCRIPTION | FROM | TO |
|-------|-----------------|-------------|------|-----|
| 2 | 11/01/10 | Welcome letter re: KATN loan including payment coupons, sent to victim L.R. | Las Vegas, NV | Vallejo, CA |
| 3 | 02/03/11 | Letter advising of change in monthly payments, sent to victim C.T. | Las Vegas, NV | Sacramento, CA |
| 4 | 05/18/11 | Letter concerning bankruptcy filing, attaching attorney letter requesting | Las Vegas, NV | Sacramento, CA |

| | | payment, sent to victim C.T. | | |
|---|---|---|---|---|
| 5 | 06/15/11 | Letter concerning bankruptcy filing, requesting continuing payments, sent to victim N.M. | Las Vegas, NV | Stockton, CA |
| 6 | 06/14/12 | Update letter requesting payment, sent to victim H.R. | Las Vegas, NV | Vallejo, CA |
| 7 | 06/14/12 | Update letter requesting payment, sent to victim A.M. | Las Vegas, NV | Riverbank, CA |
| 8 | 06/14/12 | Update letter requesting payment, sent to victim A.E. | Las Vegas, NV | Modesto, CA |
| 9 | 09/06/12 | KATN Direct Servicing letter, sent to victim C.T. | Las Vegas, NV | Sacramento, CA |
| 10 | 02/08/13 | Purported Payoff Check re: victim C.T.'s loan | Sacramento, CA | Pittsburg, CA |
| 11 | 04/15/13 | Monthly "loan" payment from victim A.C. | Fresno, CA | Pittsburg, CA |
| 12 | 08/20/13 | KATN loan payment coupons, sent to victim A.C. | Las Vegas, NV | Fresno, CA |

All in violation of Title 18, United States Code, Section 1341.

COUNT THIRTEEN:  [18 U.S.C. § 1957 - Monetary Transactions In Criminally Derived Property]

The Grand Jury further charges: T H A T

ALAN DAVID TIKAL,

Defendant herein, as follows:

1.      On or about October 5, 2010, defendant ALAN DAVID TIKAL did knowingly engage and attempt to engage in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, to wit: using check No. 98, defendant ALAN DAVID TIKAL withdrew $10,750 in cash from an account he controlled in the name of the KATN Revocable Living Trust (Checking Account No. xxxxxx0304) at Wells Fargo Bank in Rogers, Minnesota, a financial institution as defined in Section 1956(c)(6) of Title 18, such funds having been derived from a specified unlawful activity.  The previous day, October 4, 2010, at defendant ALAN DAVID TIKAL's direction, an associate known to the grand jury transferred a total of $23,975 in homeowner payments from a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341, from an account in Stockton, California (JP Morgan Chase Checking Account No. xxxxx9911) to defendant ALAN DAVID TIKAL's account.  All in violation of Title 18, United States Code, Section 1957.

///

Superseding Indictment

COUNT FOURTEEN: [18 U.S.C. § 1957 - Monetary Transactions In Criminally Derived Property]

The Grand Jury further charges:  T H A T

TAMARA TERESA TIKAL,
aka Tamara Teresa Silva,

Defendant herein, as follows:

1.     On or about December 18, 2010, defendant TAMARA TERESA TIKAL did knowingly engage and attempt to engage in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, to wit: defendant TAMARA TERESA TIKAL wrote check No. 5101 to Cadillac of Las Vegas in the amount of $29,999.99 from an account she controlled in her own name (Checking Account No. x-xxx-xxxx-0413) at US Bank in Saint Paul, Minnesota, a financial institution as defined in Section 1956(c)(6) of Title 18, such funds having been derived from a specified unlawful activity.  From December 13, 2010, through December 16, 2010, at defendant TAMARA TERESA TIKAL's direction, an associate known to the grand jury transferred a total of $67,425 in homeowner payments from a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341, from an account in Stockton, California (JP Morgan Chase Checking Account No. xxxxx9911) to defendant TAMARA TERESA TIKAL's account.  All in violation of Title 18, United States Code, Section 1957.

FORFEITURE ALLEGATION:     [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c),
                           18 U.S.C. § 982(a)(1), and 18 U.S.C.  § 982(a)(2)(A) –
                           Criminal Forfeiture]

1.     Upon conviction of one or more of the offenses alleged in Counts One through Twelve of this Superseding Indictment, defendants ALAN DAVID TIKAL, TAMARA TERESA TIKAL, and RAY JAN KORNFELD shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2)(A),  all property, real and personal, which constitutes or is derived from proceeds traceable to such violations and/or was obtained directly or indirectly as the result of such violations , including but not limited to the following:

a)   A sum of money equal to the amount of proceeds traceable to or obtained as a result of the offenses, for which defendants are convicted, in an amount not less than $3,400,000.

13

2.      Upon conviction of one or more of the offenses alleged in Counts Thirteen and Fourteen of this Superseding Indictment, defendants ALAN DAVID TIKAL and TAMARA TERESA TIKAL shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in such violations, and any property traceable to such property, including but not limited to the following:

a)   A sum of money equal to the amount of money involved in the offenses, for which defendants are convicted.

3.      If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Fourteen of this Superseding Indictment, for which defendants are convicted:

a)      cannot be located upon the exercise of due diligence;

b)      has been transferred or sold to, or deposited with, a third party;

c)      has been placed beyond the jurisdiction of the court;

d)      has been substantially diminished in value; or

e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA

_____
FOREPERSON

_____
BENJAMIN B. WAGNER
United States Attorney

Superseding Indictment

No. _____

# UNITED STATES DISTRICT COURT

# SEALED *Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA

*vs.*

## DAVID ALAN TIKAL, TAMARA TERESA TIKAL, aka Tamara Teresa Silva, and RAY JAN KORNFELD

## S U P E R S E D I N G   I N D I C T M E N T

**VIOLATION(S):**  18 U.S.C. § 371 - Conspiracy;
18 U.S.C. § 1341 - Mail Fraud Affecting a Financial Institution
(11 counts); 18 U.S.C. § 1957 - Monetary Transactions In
Criminally Derived Property (2 counts); and18 U.S.C. § 981
(a)(1)(C),  28 U.S.C. § 2461(c), 18 U.S.C. §  982 (a)(a), and 18
U.S.C. §  982 (a)(2)(A) - Criminal Forfeiture

*A true bill,*

*/s/ Signature on file w/AUSA*

*Foreman.*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day*

*of* _ _ _ _ _ _ _ _ _ _ _ _ _ , *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk.*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _ _    **NO PROCESS NECESSARY** *as to Alan David Tikal*

**NO BAIL WARRANT** *as to Tamara Tikal and Ray Kornfeld*

GPO 863 525

## PENALTY SLIP
### *CR.S-12-0362 TLN

**Defendants:**                     Alan David TIKAL
                                    Tamara Teresa TIKAL, aka Tamara Teresa Silva, and
                                    Ray Jan KORNFELD

**COUNT 1:**                        Alan David TIKAL and
                                    Tamara Teresa TIKAL, aka Tamara Teresa Silva, and
                                    Ray Jan KORNFELD

Violation:                          18 USC § 371 – Conspiracy
Penalty:                            Not more than 5 years imprisonment
                                    Not more than $250,000 in fine, or both
                                    Not more than 3 years supervised release

**COUNTS 2-12:**                    Alan David TIKAL and
                                    Tamara Teresa TIKAL, aka Tamara Teresa Silva, and
                                    Ray Jan KORNFELD

Violation:                          18 USC § 1341 - Mail Fraud Affecting a Financial Institution
Penalty:                            Not more than 30 years imprisonment
                                    Not more than $1,000,000 in fine, or both
                                    Not more than 5 years supervised release

**COUNT 13:**                       Alan David TIKAL

Violation:                          18 USC § 1957 – Monetary Transactions In Criminally
                                    Derived Property
Penalty:                            Not more than 10 years imprisonment
                                    Not more than $250,000 in fine, or both
                                    Not more than 3 years supervised release

**COUNTS 14:**                      Tamara Teresa TIKAL, aka Tamara Teresa Silva

Violation:                          18 USC § 1957 – Monetary Transactions In Criminally
                                    Derived Property
Penalty:                            Not more than 10 years imprisonment
                                    Not more than $250,000 in fine, or both
                                    Not more than 3 years supervised release

**FORFEITURE ALLEGATION:**          ALL DEFENDANTS
Violation:                          18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c),
                                    18 U.S.C. § 982(a)(1), and 18 U.S.C. § 982(a)(2)(A) –
                                    Criminal Forfeiture

Penalty:                            As stated in indictment

**ASSESSMENT:**                     $100 each count